## THE COLUMBIA.

BAYSEN and others *v.* THE COLUMBIA and THE EDGAR BAXTER.

CAHILL and others *v.* THE COLUMBIA.

THE NAT. FREIGHT AND LIGHTERAGE CO. *v.* THE COLUMBIA.

*(District Court, E. D. New York.   June 14, 1881.)*

1. COLLISION IN EAST RIVER—TUG AND FERRY-BOAT—UNAVOIDABLE ACCIDENT—COLLISION AT PIER.

Where collisions occurred in the East river, at New York, in rapid succession, between a tug-boat and a ferry-boat entering her slip, a bark in tow of the tug and the ferry-boat, and the ferry-boat and a lighter lying at the end of the pier, and actions for damages were brought by the owners of the bark against both the tug and the ferry-boat, and by the owners of the tug and of the lighter against the ferry-boat, *held,* that the tug was in fault for the first two collisions, having attempted to cross the bows of the ferry-boat when she might have gone safely under her stern ; and the collision of the ferry-boat with the lighter being unavoidable by her as the result of the other collisions, the libel of the lighter against the ferry-boat must be dismissed.

*Hill, Wing & Showdy,* for Baysen and others.   *B. D. Silliman* and *E. L. Owen,* for the Columbia and the Baxter.   *E. L. Owen,* for Cahill and others.   *B. D. Silliman,* for the Columbia.   *C. E. Crowell,* for the National Freight and Lighterage Company.

BENEDICT, D. J. These three actions, which arose out of a collision that occurred at the South ferry, on the fourteenth day of October, 1879, have been tried together. The ferry-boat Columbia, one of the regular ferry-boats of the Union Ferry Company, plying on the South ferry between New York and Brooklyn, was, at the time in question, on her regular trip from Brooklyn to New York in the day-time, the tide being ebb and the weather clear. The tug Edgar Baxter, having the bark Laura in tow upon a hawser, was approaching the East river, from the North river, on a course crossing that of the

ferry-boat. The ferry-boat kept her course towards her slip. The tug kept her course, rather drawing nearer to the New York piers, until the boats were close together, when she dropped the hawser by which she was towing the bark, and sheered sharply to starboard. By this movement she was brought into the ferry-slip, and when in the slip she was struck by the ferry-boat on the starboard side, sustaining the damage sued for by the libellant Cahill in the second of the above-mentioned actions. At the time the ferry-boat came in contact with the tug the headway of the ferry-boat had been about stopped by the reverse action of her engine, and by the continued action of her engine the ferry-boat was carried back a short distance. She then moved ahead again, when the Laura, having been cast adrift by the tug, but still moving ahead, brought up on the ferry-boat's stern, and did some slight damage to the ferry-boat, besides sustaining some damage herself. To recover this damage to the Laura the libellant Baysen brings the first of the above-mentioned actions against both the ferry-boat and the tug. The ferry-boat, shortly after she was struck by the bark, brought up with her bow against the lighter Watson, then lying at the end of pier 2, a pier forming the east side of the ferry-slip, and did some slight damage to the lighter, for the recovery whereof the third of the above-mentioned actions is brought against the ferry-boat alone.

The testimony, although not free from contradictions in some particulars, leaves little room for doubt in regard to the controlling facts.

It plainly appears that, as the vessels were approaching each other, the tug had the ferry-boat upon her starboard side, and the vessels were on courses crossing each other. According to the rule of navigation it was, therefore, the duty of the tug to avoid the ferry-boat, and the duty of the ferry-boat to hold her course. The ferry-boat did hold her course, and the tug did not avoid her. The tug would have avoided the ferry-boat if she had stopped when she saw the approach of the ferry-boat. She claims, by way of excuse for not stopping, that, having the bark in tow, it was not possible for her to stop without incurring the danger of being run over by the bark. But I am not satisfied with this excuse. As I view the evidence the tug could have stopped, and even backed away, without being run over by the bark.

The tug would also have avoided the ferry-boat, if, when the ferry-boat was seen to be approaching, the tug had ported her helm and gone out towards the middle of the river. She claims, by way of

excuse for not porting, that it was impossible for her to do so because of the presence of a number of vessels coming down the stream at that time. It is true that numerous witnesses, who saw the collision, say that it was not possible for the tug, under the circumstances, to bear off towards the middle of the river so as to avoid the ferry-boat. The strength of this testimony, as evidence of an impossibility to steer out on the part of the tug, is, however, greatly shaken by the fact that the bark bore off towards the middle of the river when the hawser was cast off, and the more important fact that another tug just behind the Baxter did, in fact, bear off and passed in safety astern of the ferry-boat. But if it be true that the tug-boat, by electing to keep along the piers in the eddy-tide, instead of putting herself in the middle of the river on passing the battery, as beyond all question she could have safely done by timely action to that end, placed herself in a position where she could do nothing but keep on across the bows of the ferry-boat at the risk of collision, still she is guilty of fault. The statute of this state required her to be in the middle of the river from the time of passing the barge office, instead of which she was near the piers; and this intentionally for the purpose of saving time by taking advantage of the eddy-tide. Such an attempt to pass along by the mouth of the ferry-slip was illegal, and if, in the prosecution of an illegal undertaking, the tug placed herself in a position where it was not possible for her to discharge the duty cast upon her, by the rules of navigation, namely, to avoid a vessel approaching her course upon her starboard side, she has no cause to complain of any damage resulting from her disobedience to the law. I have not overlooked the argument based on the testimony in respect to a usage for vessels passing up the East river keeping close to the piers in order to take advantage of the eddy-tide. But no such usage can be countenanced. It is forbidden by the law, and must in every instance be held illegal by the courts. It would, indeed, be held illegal by the courts if there were no statute, because of the unnecessary danger of collision created thereby.

It is said the ferry-boat should have stopped. No doubt this collision would have been avoided if the ferry-boat had been stopped in time to permit the Baxter and her tow to pass along inshore of her. But the rules of navigation gave the ferry-boat the right of way. She had the right, therefore, to assume that the boat would bear off instead of inshore, and the situation required her to act upon that assumption and keep on her course. This she did, and the result affords good ground for the belief that if the tug-boat had done what

she could to have passed under the stern, instead of across the bows, of the ferry-boat, there would not have been any collision.

These views dispose of the action brought by the Baxter against the Columbia, and compel a dismissal of the libel in that case. They also compel a dismissal of the libel of the bark as against the Columbia, and entitle the libellant Baysen to a decree against the Baxter. The case of the lighter Watson is different, for she was lying at the end of pier 2. Still, I am inclined to the opinion that the ferry-boat must be absolved from any liability for the damage done to the lighter. I cannot say, upon the testimony, that the collision with the lighter was the result of negligence on the part of the ferry-boat. The ferry-boat was, by the fault of the tug and the tow, driven into very close quarters, and if, miscalculating her momentum by a few feet, when, in the endeavor to escape from the tug and her tow, she brought up against the lighter, which had seen fit to put herself in an exposed position at the end of the pier, any damage resulting therefrom, if not to be considered to be within the risk assumed by the lighter when she placed herself in such an exposed position, must, in my opinion, be considered as part of the natural result of the negligence of the tug, for which the tug, and not the ferry-boat, would, in that case, be responsible.

The libel of the National Freight and Lighterage Company must, therefore, be dismissed.